Insurance Agreements.

b.    RMG is a third party that specializes in performing reviews of mortgage loan origination and servicing issues and was engaged by FGIC for that purpose. RMG reviewed the files relating to some of defaulted the Mortgage Loans and found that there were defaulted Mortgage Loans at that time that violated several of Indymac's representations and warranties contained in the 2006-1 and 2006-2B Transaction Documents and Insurance Agreements.

49.    a.    FGIC has made repeated requests to Indymac to repurchase or substitute for the defaulted Mortgage Loans that were identified by RMG as violating Indymac's representations and warranties.  FGIC has specifically identified to Indymac the particular defective Mortgage Loans at issue in the Securitizations and the particular breaches of Indymac's representations and warranties as to each such Mortgage Loan.

b.    Indymac failed and refused to repurchase or substitute for almost all of the identified  defective Mortgage Loans.

50.    a.    After discussions with Indymac, review of Indymac's responses relating to the defective Mortgage Loans and additional review of the defective Mortgage Loans, and in a good faith effort to compromise and resolve the outstanding repurchase requests, in August 2007 FGIC reduced the number of defective Mortgage Loans subject to its repurchase demand (the "**August Defective Mortgage Loans**").

b.    Later in 2007, RMG reviewed the files relating to certain additional defaulted Mortgage Loans and identified additional defective Mortgage Loans in the 2006-1

Securitization (the "**December Defective Mortgage Loans**") that also breach representations and warranties of Indymac.

51.    **a**.    By correspondence dated December 18, 2007, FGIC, by and through its counsel, demanded that Indymac repurchase or substitute for the December Defective Mortgage Loans that were identified by RMG as violating Indymac's representations and warranties. FGIC has specifically identified to Indymac the particular defective Mortgage Loans at issue in the Securitizations and the particular breaches of Indymac's representations and warranties as to each such Mortgage Loan.

**b.**    In the same letter, FGIC reiterated its outstanding demand that Indymac repurchase the August Defective Mortgage Loans.

**c.**    Indymac has failed to repurchase the August Defective Mortgage Loans. Indymac has also failed to repurchase the December Defective Mortgage Loans. Indymac has also failed to substitute for such Mortgage Loans.

52.    **a.**    Upon information and belief, there are additional defaulted Mortgage Loans in the 2006-1 Securitization, which additional Mortgage Loans are also subject to repurchase by Indymac for breaches of representations and warranties in the 2006-1 PSA.

**b.**    Upon information and belief, there are additional defaulted Mortgage Loans in the 2006-2B Securitization, which Mortgage Loans are also subject to repurchase by Indymac for breaches of representations and warranties in the 2006-2B PSA.

**c.**    Upon information and belief, there are defaulted Mortgage Loans in the 2006-H1 Securitization, which Mortgage Loans are also subject to repurchase by Indymac for breaches of representations and warranties in the 2006-H1 MLPA and SSA.

53.   a.   Upon information and belief, there are also defaulted Mortgage Loans in the 2006-1 and 2006-2B Securitizations, which Mortgage Loans are subject to repurchase or substitution by Indymac for breaches of its representations and warranties in the 2006-1 and 2006-2B Transaction Documents that to the best of Indymac's knowledge there was no fraud, error, omission, misrepresentation, negligence or similar occurrence of Indymac or the related borrower in connection with the origination of the 2006-1 and 2006-2B Mortgage Loans.

b.   Upon information and belief, there are defaulted Mortgage Loans in the 2006-2B Securitization, which Mortgage Loans are subject to repurchase or substitution by Indymac for breaches of the representations and warranties in the Pool Policy adopted by Indymac, that there was no fraud, dishonesty or misrepresentation of any person, including Indymac or the related borrower, in connection with the origination of the 2006-2B Covered Mortgage Loans.

c.   Upon information and belief, there are defaulted Mortgage Loans in the 2006-H1 Securitization, which Mortgage Loans are subject to repurchase or substitution by Indymac for breaches of its representations and warranties that there was no fraud, error, omission, misrepresentation, negligence or similar occurrence of Indymac, the related borrower or any other party in connection with the origination of the Mortgage Loans.

54.   a.   Upon information and belief, some of the 2006-1, 2006-2B and 2006-H1 defaulted Mortgage Loans are tainted with borrower fraud and misrepresentation, including fraud and misrepresentations relating to owner-occupancy status, employment and income.

**b.** Upon information and belief, Indymac knew of, or alternatively was willfully ignorant of, such borrower fraud and misrepresentation in relation to such defaulted Mortgage Loans.

**55.** **a.** FGIC has suffered and will suffer damages caused by Indymac's failure to repurchase the August and December Defective Mortgage Loans.

**b.** FGIC has suffered and will suffer damages caused by Indymac's failure to repurchase other defaulted Mortgage Loans that breach Indymac's representations and warranties in the 2006-1 Securitization, the 2006-2B Securitization and the 2006-H1 Securitization as required under the 2006-1, 2006-2B and 2006-H1 Transaction Documents.

**c.** Indymac's breaches of its representation and warranties as to the August Defective Mortgage Loans and the December Defective Mortgage Loans, individually and in the aggregate, materially and adversely affect the interests of the Noteholders and FGIC in such Mortgage Loans; materially and adversely affect the value of such Mortgage Loans; and materially and adversely FGIC and the Securitized Trusts.

**d.** Upon information and belief, Indymac's breaches of its representation and warranties as to any other defective Mortgage Loans does or will, individually and in the aggregate, materially and adversely affect the interests of the Noteholders and FGIC in such Mortgage Loans; materially and adversely affect the value of such Mortgage Loans; and materially and adversely affect FGIC and the Securitized Trusts.

## Failure to Advance Funds in the 2006-2B Securitization

**56.** **a.** Under terms the 2006-2B PSA, Indymac as Servicer is obligated to advance from its own funds, without the right of reimbursement from the 2006-2B Trust, the

amount of any claim respecting Covered Mortgage Loans (plus accrued interest) for which coverage is denied or rescinded by Radian under the Pool Policy.

     **b.**     Under terms the 2006-2B PSA, Indymac is obligated to such advance such funds by the monthly Distribution Date immediately following such denial or rescission, so that such amounts can be included in the distribution to holders of the securities issued by the 2006-2B Trust on that immediately succeeding monthly Distribution Date. (2006-2B PSA, Section 4.01(d).)

     **57.**     **a.**     This obligation for Indymac to advance funds immediately upon such denial or rescission was negotiated by FGIC in the 2006-2B Securitization, including the terms of the Pool Policy, to ensure that either Radian would pay claims in regard to a Mortgage Loan on or about the date of charge-off of that Mortgage Loan or Indymac would advance funds on or about the date of that charge-off.

     **b.**     The 2006-2B PSA requires that Indymac, as servicer, charge-off a mortgage loan at 180 days of delinquency, thereby causing the 2006-2B Trust, and ultimately FGIC, to incur a loss at the date of charge-off. No loss would be incurred if the required advance was made by Indymac in a timely manner.

     **c.**     This obligation for Indymac to advance funds immediately upon such denial or rescission is also consistent with Indymac's representation that all Covered Mortgage Loans are eligible for coverage under the Pool Policy.

     **58.**     **a.**     The obligation for Indymac to advance funds is not dependant on whether Radian's denial or rescission under the Pool Policy is correct or not, and Indymac is not permitted to delay advancing such funds in order to review or challenge the reasons for

Radian's denial or rescission of coverage, or dispute any such denial or rescission with Radian. Indymac is neither a party to nor a third-party beneficiary of the Pool Policy.

b.     Any such challenge or dispute by Indymac as to the correctness of such a denial or rescission by Radian under the Pool Policy is not provided for in either the Pool Policy or the 2006-2B Transaction Documents. Any such challenge or dispute by Indymac is not a condition to Indymac's obligation to advance funds under the 2006-2B PSA. Any such challenge or dispute by Indymac is instead a separate issue solely between Indymac and Radian.

59.     a.     Indymac has also represented and warranted, as Seller of the 2006-2B Mortgage Loans, that all Covered Mortgage Loans in the 2006-2B Securitization are eligible for coverage under the Pool Policy. Any such Covered Mortgage Loan not covered under the Pool Policy contrary to and in breach of this representation and warranty must be repurchased or substituted by Indymac under the circumstances set forth in 2006-2B PSA based on this breach, which under the Transaction Documents is deemed to have a material and adverse affect.

b.     As previously alleged herein, Indymac is also required indemnify FGIC for any claim incurred as a result of the denial, rejection or rescission of any Covered Mortgage Loan under the Pool Policy.

c.     The obligations for Indymac to (i) advance funds for any Covered Mortgage Loans for which coverage is denied or rescinded under the Pool Policy; (ii) repurchase defective Mortgage Loans that breach Indymac's representation and warranty that all Covered Mortgage loans were eligible for coverage under the Pool Policy; and (iii) indemnify FGIC for any claims incurred as a result of the denial, rejection or rescission of a

Covered Mortgage Loan, are three separate and distinct obligations under the 2006-2B Insurance Agreement and Transaction Documents.

60.    a.    FGIC has repeatedly demanded that Indymac timely advance monies to the 2006-2B Trust for the amounts of all claims respecting defaulted Covered Mortgage Loans denied or rescinded by Radian under the Pool Policy.

b.    Indymac has from time to time advanced funds for some defaulted Covered Mortgage Loans for which coverage has been denied or rescinded under the Pool Policy, but Indymac has failed and refused to advance funds for most of the defaulted Covered Mortgage Loans for which coverage was denied or rescinded by Radian under the Pool Policy.

c.    Indymac has failed to, and has failed to timely, advance funds for approximately 1230 defaulted Covered Mortgage Loans as to which coverage has been denied or rescinded under the Pool Policy in the aggregate amount of approximately $77 million, as of June 2008.

61.    a.    FGIC has suffered damages in the amount of at least the claims paid on the 2006-2B Policy, and other damages, and will continue to suffer additional damages due to Indymac's breach of its obligation to timely advance funds respecting all claims for defaulted Covered Mortgage Loans for which coverage has been denied or rescinded under the Pool Policy.

b.    Delay in payments due to the Securitized Trusts and failure to pay any monies due to the Securitized Trusts has damaged, and will continue to damage, FGIC.

**Failure to Timely File Claims Under the Pool Policy and Charge-Off of Mortgage Loans**

62.    a.    Indymac is required to timely file claims in relation to the Radian Pool Policy.

b.    As specified in the 2006-2B PSA, Indymac must file claims for Covered Mortgage Loans in relation to the Pool Policy when such Mortgage Loans become four months in default.  2006-2B PSA, section 3.04.

63.    a.    The 2006-2B Trust, and FGIC as insurer of securities issued by the 2006-2B Trust, relies on payments under the Pool Policy (or advancements made by Indymac due to a rescission or denial of coverage), and claims submitted by Indymac as Servicer of such Covered Mortgage Loans within the time required by the 2006-2B PSA, to protect against losses on defaulted Covered Mortgage Loans in the 2006-2B Securitization. Without such timely and proper claims by Indymac under the Pool Policy, a shortfall of amounts available to make payment on the Notes issued by the 2006-2B Trust may exist on the applicable monthly Distribution Date and such shortfall may need to be paid for by FGIC under its 2006-2B Policy.

b.    If Indymac timely files claims for defaulted Covered Mortgage Loans in relation to the Pool Policy at the time required under the 2006-2B PSA, and if Indymac properly advances funds to the 2006-2B Trust for Mortgage Loans for which coverage is denied or rescinded by Radian immediately upon such denial or rescission, then the loss to the 2006-2B Trust (and then to FGIC as insurer under the 2006-2B Policy) caused by Charged-Off Mortgage Loans should be ameliorated or effectively cured by either Radian (by a payment for defaulted Mortgage Loans under the Pool Policy) or Indymac (by a payment because a claim was denied or rescinded by Radian).

      **c.**     FGIC carefully negotiated the 2006-2B Securitization, including the terms of the Pool Policy, to ensure that either Radian would pay claims on or about the date of charge-off or Indymac would advance funds on or about the date of charge-off.

      **d.**     Upon information and belief, Indymac may charge-off defaulted Covered Mortgage Loans in the 2006-2B Securitization as to which coverage has been denied or rescinded under the Pool Policy without Indymac advancing funds for those Mortgage Loans to the insured 2006-2B Trust, as required by the 2006-2B PSA, thus wrongfully causing further damage to the 2006-2B Securitization and to FGIC.

    **64.**   **a.**     FGIC has demanded that Indymac properly and timely file claims under the Pool Policy within the time required by the 2006-2B PSA.

      **b.**     Indymac has failed to file numerous claims properly and within the time required by the 2006-2B PSA.

    **65.**   **a.**     Upon information and belief, Indymac has requested that Radian delay giving notice of Radian's denial or rescission of coverage of Mortgage Loans under the Pool Policy as to Mortgage Loans that Radian has already determined coverage would be or is subject to such denial or rescission.

      **b.**     The effect of Indymac's requests for Radian to so delay giving notice of such denials or rescissions is to delay and reduce cash flow to the 2006-2B Trust and subject FGIC to claims that may not otherwise occur.

      **c.**     Indymac has asked Radian to delay giving notice of such denials or rescissions in bad faith, and, upon information and belief, with the intent of reducing or delaying cash flow to the 2006-2B Trust and subjecting FGIC to possible claims and harm.

66.    Under the terms of the Pool Policy, claims for defaulted Covered Mortgage Loans in the 2006-2B Securitization, must also be filed within the time required under the Pool Policy. This is a separate and additional requirement from the obligation for Indymac to file the claims at the time specified in the 2006-2B PSA.

67.    a.    FGIC has been, and will continue to be injured by Indymac's failure to timely file claims in relation to the Pool Policy within the time required by the 2006-2B PSA. FGIC will be injured by any charge-off of defaulted Covered Mortgage Loans as to which coverage has been denied or rescinded under the Pool Policy without Indymac advancing funds for those Mortgage Loans to the 2006-2B Trust.

b.    Indymac should be ordered to fulfill its obligations as Servicer and (i) timely file claims in relation to the Pool Policy within the time required by the 2006-2B PSA and (ii) not charge-off defaulted Covered Mortgage Loans as to which coverage has been denied or rescinded under the Pool Policy without Indymac advancing funds for those Mortgage Loans.

**Accuracy of Information and Breaches of Representations and Warranties**

68.    a.    Indymac further represented and warranted in the Insurance Agreements that certain information provided to FGIC by Indymac concerning the Mortgage Loans was accurate. These representations and warranties of Indymac expressly included the accuracy of the data tape containing statistical data with respect to the Mortgage Loans in the Securitizations. FGIC relied on the accuracy of Mortgage Loan information provided by Indymac in underwriting and modeling each FGIC Securitization.

b.      This Mortgage Loan information represented to by Indymac includes, as to each Mortgage Loan: owner-occupancy status of the property subject to the Mortgage Loan; combined loan-to-value ratio; the borrower's debt-to-income ratio; the borrowers FICO credit score; and, as to the 2006-2B Mortgage Loans, whether the Mortgage Loan was a Covered Mortgage Loan under the Pool Policy.

c.      **(i)** Based on the review of the data tape in the 2006-1 Securitization by FGIC and its agent, Risk Management Group ("RMG"), such data tape contains materially inaccurate information concerning Mortgage Loans in the 2006-1 Securitization, to the economic detriment of FGIC. **(ii)** Upon information and belief, similar data provided by Indymac to FGIC in connection with the 2006-2B Securitization and the 2006-H1 Securitization also contain materially inaccurate information concerning Mortgage Loans in the those respective Securitizations, also in breach of Indymac representations and warranties and to the economic detriment of FGIC

d.      Upon information and belief, some or all of the damages complained of herein were caused by the inaccuracies in the data and information provided by Indymac in each of the 2006-1 Securitization, the 2006-2B Securitization and the 2006-H1 Securitization.  To the extent that the damages complained of herein were caused, in whole or in part, by the inaccuracies in the data and information provided by Indymac in each of the Securitizations, Indymac is liable to FGIC.

e.      On information and belief, Indymac made the misrepresentations concerning the data and information concerning the Mortgage Loans in the 2006-1 Securitization, the 2006-2B Securitization and the 2006-H1 Securitization without reasonable grounds for believing them to be true and in order to induce FGIC to rely on such

misrepresentations and issue the Insurance Policies; alternatively Indymac made such misrepresentations in willful ignorance of their falsity and/or when Indymac should have known such statements were false.

**FGIC's Access Rights Under the Transaction Documents**

69.    **a.**    As to each of the Securitizations, Indymac is required under the Insurance Agreements to provide FGIC with, among other things, (i) access to the loan origination and servicing files related to the Mortgage Loans, (ii) access to conduct servicing reviews and audits of Indymac's performance as Servicer, (iii) access to interview Indymac officers and personal and inspect its servicing facilities; and (iv) such other information and data as FGIC may reasonably request relating to the Mortgage Loans and the Securitizations.

**b.**    Indymac is further required to cooperate with, and not interfere with, the enforcement of FGIC's rights under the Insurance Agreements.

70.    **a.**    FGIC has made repeated demands, including written demands, to Indymac for access to origination and servicing files related to the Mortgage Loans and other documents and information concerning the Securitizations.

**b.**    While Indymac initially provided FGIC with some such access and information for a small percentage of delinquent and defaulted mortgage loans (and permitted a consultant of FGIC to visit with Indymac servicing personnel), Indymac has failed and refused to continue providing FGIC with the full and substantive access to files (including origination and servicing files) and information that Indymac is obligated to provide and to which FGIC is entitled. Indymac has specifically informed FGIC that it will not allow FGIC (or its agents and consultants) access to the requested files and information.

71.     a.     Indymac's refusal to provide FGIC with the required access and information occurred only <u>after</u> FGIC discovered breaches of the Transaction Documents by Indymac as seller and as Servicer. It appears that Indymac is denying FGIC access and information in order to preclude the discovery by FGIC of additional defaults by Indymac and to inhibit the enforcement by FGIC of its rights and remedies under the Transaction Documents.

b.     Indymac previously acknowledged FGIC's audit rights respecting all Mortgage Loan files, including origination files, before changing its position concerning such audit rights. Indymac has now precluded the exercise of FGIC's audit rights, thus preventing the discovery of Indymac's breaches and defaults and also preventing the exercise of FGIC's rights to require repurchase of defective and defaulted Mortgage Loans.

72.     Indymac should be ordered to provide FGIC with the requested access, documents, files and information as required under the Insurance Agreements. FGIC continues to suffer damages caused by Indymac's failure to provide the access, documents, files and information as requested by FGIC and required under the Insurance Agreement.

73.     Indymac is required by the PSA's to service all Mortgage Loans in the Securitizations with the same degree of skill and care respecting mortgage loans that are serviced by Indymac for itself or others. Indymac is also expressly required as Servicer, to service the Mortgage Loans in the 2006-2B Securitization consistent with the Pool Policy.

74.     Indymac has failed to comply with its obligations under the PSA's to properly service the Mortgage Loans. Indymac's continuing defaults and deteriorating servicing under the PSA's have resulted, and will continue to result, in harm to FGIC.

**FGIC's Access Rights Under the Lot Loan Securitizations**

75.    **a.**    As to each of the Lot Loan Securitizations, Indymac is required under the Lot Loan Insurance Agreements to provide FGIC with, among other things, (i) access to the loan origination and servicing files related to the Lot Loans, (ii)  access to conduct servicing reviews and audits of Indymac's performance as Servicer, (iii) access to interview Indymac officers and personal and inspect its servicing facilities; and (iv) such other information and data as FGIC may reasonably request relating to the Lot Loans and the Lot Loan Securitizations.

**b.**    Indymac is further required to cooperate with, and not interfere with, the enforcement of FGIC's rights under the Lot Loan Insurance Agreements.

76.    **a.**    FGIC has made repeated demands, including written demands, to Indymac for access to origination and servicing files related to the Lot Loans and other documents and information concerning the Lot Loan Securitizations.

**b.**    Indymac has failed and refused to provide FGIC with access to files (including origination and servicing files) and information concerning the Lot Loans and the Lot Loan Securitizations that Indymac is obligated to provide and to which FGIC is entitled. Indymac has specifically informed FGIC that Indymac will not allow FGIC (or its agents and consultants) access to the requested files and information.

**c.**    FGIC has suffered and continues to suffer damages caused by Indymac's failure to provide the access, documents, files and information as requested by FGIC and required under the Lot Loan Insurance Agreement.  Indymac should be ordered to provide FGIC with the requested access, documents, files and information concerning the Lot Loans and the Lot Loan Securitizations.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
**Breach of Contract and Declaratory Relief**
**Failure to Indemnify**

77.     Plaintiff repeats and realleges each of the allegations of all of the paragraphs previously pled in this Complaint as if each were set forth in full herein.

78.     Under the Insurance Agreements, Indymac is required to reimburse and indemnify FGIC for losses and damages suffered by FGIC, including claims paid by FGIC under the Insurance Policies, caused by or arising from Indymac's breaches and defaults under the PSA's and Indymac's breaches and defaults under the Insurance Agreements, including breaches by Indymac of its representations or warranties in the Transactions Documents, any untrue statement or material omission by Indymac, or any misfeasance or other wrongful act by Indymac in relation to the Securitizations, or resulting from the denial or the rescission of coverage of a Covered Mortgage Loan, under the Pool Policy.

79.     **a**.     On or about April 25, 2008, FGIC paid a claim under the 2006-2B Policy in the amount of $4,203,788.  On or about May 27, 2008, FGIC paid a claim under the 2006-2B Policy in the amount of $1,697,333.  On or about June 25, 2008, FGIC paid a claim under the 2006-2B Policy in the amount of $5,381,565.  To date, FGIC has paid claims under the 2006-2B Policy in the total amount of approximately $11,282,687.

**b**.     But for Indymac's breaches and defaults complained of herein, no claims would have been made or paid under the 2006-2B Policy; or, in the alternative, any claims made or paid under the 2006-2B Policy would have been in a lesser amount than actually paid, such lesser amount nonetheless being at least in excess of $75,000.

80.    a.    On or about May 27, 2008, FGIC paid a claim under the 2006-1 Policy in the amount of $1,109,409.   On or about June 25, 2008, FGIC paid a claim under the 2006-1 Policy in the amount of $778,149. To date, FGIC has paid claims under the 2006-1 Policy in the total amount of approximately $1,887,559.

b.    But for Indymac's continuing breaches and defaults complained of herein, no claims would have been made or paid under the 2006-1 Policy.

81.    a.    On or about June 25, 2008, FGIC paid a claim under the 2006-H1 Policy in the amount of $5,030,455.

b.    But for Indymac's continuing breaches and defaults complained of herein, upon information and belief, no claims would have been made or paid under the 2006-1 Policy.

82.    To date, FGIC has paid combined claims on the 2006-2B Policy, the 2006-1 Policy and the 2006-H1 Policy totaling approximately $18,200,701.

83.    FGIC expects to pay further claims under the 2006-2B Policy, the 2006-1 Policy, and the 2006-H1 Policy.  These additional claims would not be paid or incurred, or would be substantially reduced, but for Indymac's breaches and defaults complained of herein.

84.    FGIC has incurred consultant's fees and other costs and expenses in discovering Indymac's defaults and enforcing FGIC's rights in relation the Securitizations and the Mortgage Loans.

85.    Indymac is liable to FGIC for all of FGIC's attorney's fees, consultant's fees

and other costs and expenses that were caused by Indymac's breaches and incurred by FGIC in discovering Indymac's defaults and enforcing FGIC's rights, including all costs associated with this action.

86.    There has arisen an actual, concrete and justiciable controversy between FGIC and Indymac regarding Indymac's obligation to reimburse and indemnify FGIC for all claims to be made under the Policies resulting from Indymac's breaches and all expenses incurred by FGIC in discovering Indymac's defaults and enforcing FGIC's rights.

87.    FGIC has suffered damages as a result of the claims paid under the 2006-2B Policy, the 2006-1 Policy and the 2006-H1 Policy, and Indymac's failure to indemnify FGIC. FGIC will suffer additional damages as a result of claims to be paid under the Policies.

88.    This Court should find and declare that Indymac is required to reimburse and indemnify FGIC for: (i) the claims paid under the 2006-2B Policy, the  2006-2B Policy, and the 2006-1 Policy caused by Indymac's breaches under the Transaction Documents; (ii) all future claims made or paid under any of the Policies caused by Indymac's breaches; and (iii) all claims to be made or paid under the 2006-2B Policy as a result of the denial, rejection or rescission of a Covered Mortgage Loan under the Pool Policy.

89.    This Court should also find and declare that Indymac is required to reimburse and indemnify FGIC for: (i) all expenses incurred or to be incurred by FGIC in discovering Indymac's defaults and enforcing FGIC's rights and (ii) all expenses or liabilities incurred or to be incurred by FGIC as a result of the denial, rejection or rescission of a Covered Mortgage Loan under the Pool Policy.

**90.**    **a.**    FGIC should be awarded damages in the amount of: the claims paid by FGIC under the 2006-2B Policy, the 2006-1 Policy and the 2006-H1 Policy caused by Indymac's breaches; all future claims made or paid under any of the Policies caused by Indymac's breaches; and all claims to be made or paid under the 2006-2B Policy as a result of the denial, rejection or rescission of a Covered Mortgage Loan under the Pool Policy.

**b.**    FGIC should also be awarded damages in the amount of: all expenses incurred or to be incurred by FGIC in discovering Indymac's defaults and enforcing FGIC's rights, and all expenses or liabilities incurred or to be incurred by FGIC as a result of the denial, rejection or rescission of a Covered Mortgage Loan under the Pool Policy.

**SECOND CAUSE OF ACTION**
**Breach of Contract, Declaratory Relief and Specific Performance**
**Failure to Advance Funds**

**91.**    Plaintiff repeats and realleges each of the allegations of all of the paragraphs previously pled in this Complaint as if each were set forth in full herein.

**92.**    Indymac is in breach of its obligations under the 2006-2B PSA to advance its own funds to the 2006-2B Trust for each Covered Mortgage Loan for which coverage has been denied or rescinded by Radian under the Pool Policy.

**93.**    Indymac is in breach of its obligations under the 2006-2B PSA to timely advance its own funds to the 2006-2B Trust for each Covered Mortgage Loan for which coverage has been denied or rescinded by Radian under the Pool Policy by the Distribution Date immediately following such denial or rescission.

**94.**    There has arisen an actual, concrete and justiciable controversy between FGIC and Indymac regarding Indymac's obligations to advance and timely advance its own funds

to the 2006-2B Trust for each Covered Mortgage Loan for which coverage is denied or rescinded by Radian under the Pool Policy.

95.    FGIC has suffered and will continue to suffer damages as a result of Indymac's failure to advance funds, and remains exposed to further losses and expense as a result of Indymac's continuing breaches.  Such damages, or at least some of which, cannot or may not be measured with sufficient certainty in money damages.

96.    This Court should find and declare that Indymac is required to timely advance its own funds to the 2006-2B Trust for each Covered Mortgage Loan for which coverage has been or is hereafter denied or rescinded by Radian under the Pool Policy.

97.    Indymac should be ordered to timely advance it own funds to the 2006-2B Trust for each Covered Mortgage Loan for which coverage is hereafter denied or rescinded by Radian under the Pool Policy and to immediately pay such advances for all Covered Mortgage Loan for which coverage has already been denied or rescinded.

98.    Indymac should be further ordered to not request that Radian delay giving notice of Radian's denial or rescission of coverage of Mortgage Loans under the Pool Policy.

## THIRD CAUSE OF ACTION
### Breach of Contract, Declaratory Relief and Specific Performance
### Failure to Repurchase Defective Mortgage Loans

99.    Plaintiff repeats and realleges each of the allegations of all of the paragraphs previously pled in this Complaint as if each were set forth in full herein.

100.    Indymac is required under the Transaction Documents to repurchase or substitute for Mortgage Loans as to which there are breaches of its representations and warranties.

101.    There are Mortgage Loans in the 2006-1 and 2006-2B Securitizations which are in breach of Indymac's representations and warranties in the 2006-1 and 2006-2B Transaction Documents, including the August Defective Mortgage Loans, and the December Defective Mortgage Loans.

102.    The Covered Mortgage Loans for which coverage was rescinded by Radian under the Pool Policy (the "**2006-2B Rescinded Mortgage Loans**") – in addition to being subject to repurchase for breaches of other representations and warranties in the 2006-2B Transaction Documents -- are also subject to repurchase or substitution by Indymac for breach of Indymac's representation and warranty that all Covered Mortgage Loans were eligible for coverage under the Pool Policy.  The repurchase obligation for these 2006-2B Rescinded Mortgage Loans is in addition to Indymac's obligation to advance monies to the 2006-2B Trust for such Rescinded Mortgage Loans and to indemnify FGIC.

103.    These breaches of Indymac's representations and warranties as to the August Defective Mortgage Loans and the December Defective Mortgage Loans materially and adversely affect the interests of the Noteholders and FGIC in such Mortgage Loans and materially and adversely affect the value of such Mortgage Loans.  Some of representations and warranties breached by Indymac as alleged herein are also subject to automatic repurchase regardless of the affect on Noteholders, FGIC or the value of Mortgage Loans, or are deemed to be material and adverse.

104.    The breach of the representation and warranty that the 2006-2B Rescinded Mortgage Loans were eligible for coverage under the Pool Policy is, under the 2006-2B PSA, deemed to materially and adversely affect the interests of the Noteholders in the related Mortgage Loan, and also in fact materially and adversely affects the interests of the

Noteholders and FGIC in the related Mortgage Loan.

105.   FGIC has given Indymac notice of these breaches relating to the August Defective Mortgage Loans, the December Defective Mortgage Loans and the 2006-2B Rescinded Mortgage Loans; has further demanded that Indymac repurchase the August Defective Mortgage Loans and the December Defective Mortgage Loans; and the notice and cure period has expired as to the August Defective Mortgage Loans, the December Defective Mortgage Loans and the 2006-2B Rescinded Mortgage Loans.

106.   Indymac has failed and refused to repurchase or substitute for the August Defective Mortgage Loans and the December Defective Mortgage Loans.

107.   In addition to failing to advance funds to the 2006-2B Trust for the 2006-2B Rescinded Mortgage Loans, Indymac has also failed to repurchase or substitute for such 2006-2B Rescinded Mortgage Loans.

108.   Upon information and belief there are other Mortgage Loans in the 2006-1 Securitization, the 2006-2B Securitization and the 2006-H1 Securitization that are also in breach of Indymac's representations and warranties, and are otherwise subject to repurchase or substitution by Indymac under the terms of the applicable Transaction Documents, and Indymac has also failed to repurchase or substitute for these other defective Mortgage Loans.

109.   There has arisen an actual, concrete and justiciable controversy between FGIC and Indymac regarding Indymac's obligations to repurchase defective Mortgage Loans.

110.   FGIC has suffered and will continue to suffer damages as a result of Indymac's failure to repurchase defective Mortgage Loans, and remains exposed to further

losses and expense as a result of Indymac's continuing breaches.  Such damages, or at least some of which, cannot or may not be measured with sufficient certainty in money damages.

111.    This Court should declare that Indymac is required to (i) repurchase the August Defective Mortgage Loans and the December Defective Mortgage Loans, (ii) repurchase any 2006-2B Rescinded Mortgage Loans for which it fails to advance monies to the 2006-2B Trust; and (iii) repurchase any other Mortgage Loans in the Securitizations that are in breach of Indymac's representations and warranties in the Transaction Documents and subject to Indymac's repurchase obligation.

112.    Indymac should be ordered to (i) repurchase the August Defective Mortgage Loans and the December Defective Mortgage Loans; (ii) repurchase any 2006-2B Rescinded Mortgage Loans for which it fails to advance monies to the 2006-2B Trust; and (iii) repurchase any other Mortgage Loans in the Securitizations that are in breach of Indymac's representations and warranties in the Transaction Documents which breaches materially and adversely affect the interests of the Noteholders or FGIC in such Mortgage Loan or materially and adversely affect such Mortgage Loan, or which are subject to automatic repurchase regardless of the affect on the Noteholders or FGIC or on the Mortgage Loans, or are deemed to be material and adverse.

### FOURTH CAUSE OF ACTION
**Breach of Contract, Declaratory Relief and Specific Performance**
**Failure to Timely File Claims and Not Charge-Off Mortgage Loans Without Advancing**

113.    Plaintiff repeats and realleges each of the allegations of all of the paragraphs previously pled in this Complaint as if each were set forth in full herein.

114.    Indymac is in breach of its obligations under the 2006-2B PSA to timely file

claims for defaulted Covered Mortgage Loans under the Radian Pool Policy and may become in breach of its obligation to not charge-off defaulted Covered Mortgage Loans for which coverage has been denied or rescinded under the Radian Pool Policy without advancing for those Mortgage Loans.

115.    There has arisen an actual, concrete and justiciable controversy between FGIC and Indymac regarding Indymac's obligation to timely file claims under the Pool Policy and regarding not charging-off defaulted Covered Mortgage Loans for which coverage has been denied or rescinded under the Pool Policy without advancing for those Mortgage Loans.

116.    FGIC has been, and will continue to be injured by Indymac's failure to timely file claims under the Pool Policy.  FGIC will be injured should Indymac charge-off defaulted Covered Mortgage Loans for which coverage has been denied or rescinded under the Radian Pool Policy without advancing for those Mortgage Loans.  Such damages, or at least some of which, cannot or may not be measured with sufficient certainty in money damages.

117.    This Court should declare that Indymac is required to timely file claims under the Radian Pool Policy within the time specified in the 2006-2B PSA.  This Court should order and declare that Indymac not charge-off defaulted Covered Mortgage Loans for which coverage has been denied or rescinded under the Radian Pool Policy without advancing to the 2006-2B Trust for those Mortgage Loans.

## FIFTH CAUSE OF ACTION
### Breach of Contract, Declaratory Judgment and Specific Performance
### Inspection and Access - 2006-1, 2006-2B and 2006-H1 Securitizations

118.    Plaintiff repeats and realleges each of the allegations of all of the paragraphs previously pled in this Complaint as if each were set forth in full herein.

119.    Indymac is required under the Transaction Documents to permit FGIC (i) access to the loan origination and servicing files related to the Mortgage Loans, (ii)  access to conduct servicing reviews and audits of Indymac's performance as Servicer, (iii) access to interview Indymac officers and personal and inspect its servicing facilities; and (iv) such other information, records and data as FGIC may reasonably request relating to the Mortgage Loans and the Securitizations.

120.    Despite repeated requests by FGIC, Indymac has failed and refused to permit FGIC continuing full and substantive (i) access to the loan origination and servicing files related to the Mortgage Loans, (ii) access to conduct servicing reviews and audits of Indymac's performance as Servicer, (iii) access to interview Indymac officers and personal and inspect its servicing facilities, and (iv) access to such other information, records and data as FGIC has reasonably requested relating to the Mortgage Loans and the Securitizations.

121.    Indymac has wrongly claimed it has no obligation to provide FGIC such information, files, documents and access.  Indymac has breached its obligations to cooperate, and not interfere with, the enforcement of FGIC's rights under the Insurance Agreements.

122.    Indymac's breach of its obligation to allow FGIC access to loan origination and servicing files, related to the Mortgage Loans and other information and data relating to the Mortgage Loans and the Securitizations, and Indymac's breach of its obligation to cooperate with, and not interfere with, the enforcement of FGIC's rights under the Insurance Agreements have prevented FGIC from specifically identifying these additional defective Mortgage Loans.

123.    There has arisen an actual, concrete and justiciable controversy between FGIC

and Indymac regarding Indymac's obligation to provide, and FGIC's right to obtain, access to the documents, files and information concerning the Mortgage Loans and the Securitizations as alleged herein.

124.    FGIC has been and will continue to be injured by Indymac's wrongful refusal to provide the properly requested information, files and access. Such damages, or at least some of which, cannot or may not be measured with sufficient certainty in money damages.

125.    FGIC is entitled to a declaration establishing the rights and obligations of the parties, including, but not limited to, that FGIC is entitled to access, documents and information as provided in the Transaction Documents and requested herein concerning each of the Securitizations, including at least the following:

(i)    Mortgage Loan origination files, including all documents executed, provided or relied upon in connection with the origination of each Mortgage Loan;

(ii)    Mortgage Loan servicing files;

(iii)    Indymac's servicing notes and systems;

(iv)    Indymac's servicing officers and personnel with knowledge concerning the Mortgage Loans and the FGIC Securitizations;

(v)    Mortgage Loan data including information about the mortgaged property and the borrower; and

(vi)    information relating to the Mortgage Loans and the origination and servicing thereof that is necessary to the enforcement of FGIC's rights and remedies.

126.    Indymac should be ordered to provide FGIC with immediate and continuing access to the following documents and information concerning the Securitizations:

(i)    Mortgage Loan origination files, including all documents executed, provided or relied upon in connection with the origination of each Mortgage Loan;

(ii)    Mortgage Loan servicing files;

(iii)     Indymac's servicing notes and systems;

(iv)     Indymac's servicing officers and personnel with knowledge concerning the Mortgage Loans and the FGIC Securitizations;

(v)     Mortgage Loan data including information about the mortgaged property and the borrower; and

(vi)     information relating to the Mortgage Loans and the origination and servicing thereof that is necessary to the enforcement of FGIC's rights and remedies.

## SIXTH CAUSE OF ACTION
### Breach of Contract, Declaratory Judgment and Specific Performance
### Inspection and Access – Lot Loan Securitizations

127.     Plaintiff repeats and realleges each of the allegations of all of the paragraphs previously pled in this Complaint as if each were set forth in full herein.

128.     Indymac is required under the Lot Loan Securitizations and the Lot Loan Insurance Agreements to permit FGIC (i) access to the loan origination and servicing files related to the Lot Loans, (ii)  access to conduct servicing reviews and audits of Indymac's performance as Servicer, (iii) access to interview Indymac officers and personal and inspect its servicing facilities; and (iv) such other information, records and data as FGIC may reasonably request relating to the Lot Loans and the Lot Loan.

129.     Despite repeated requests by FGIC, Indymac has failed and refused to permit FGIC continuing full and substantive (i) access to the loan origination and servicing files related to the Lot Loans, (ii) access to conduct servicing reviews and audits of Indymac's performance as Servicer, (iii) access to interview Indymac officers and personal and inspect its servicing facilities, and (iv) access to such other information, records and data as FGIC has reasonably requested relating to the Lot Loans and the Lot Loan Securitizations.

130.     Indymac has wrongly claimed it has no obligation to provide FGIC such

information, files, documents and access.  Indymac has breached its obligations to cooperate, and not interfere with, the enforcement of FGIC's rights under the Lot Loan Insurance Agreements.

131.    Indymac's breach of its obligation to allow FGIC access to loan origination and servicing files, related to the Lot Loans and other information and data relating to the Lot Loan Securitizations, and Indymac's breach of its obligation to cooperate with, and not interfere with, the enforcement of FGIC's rights under the Lot Loan Insurance Agreements have, upon information and belief, prevented FGIC from specifically identifying defective Lot Loans and other breaches of the Indymac's obligations in the Lot Loan Securitizations.

132.    There has arisen an actual, concrete and justiciable controversy between FGIC and Indymac regarding Indymac's obligation to provide, and FGIC's right to obtain, access to the documents, files and information concerning the Lot Loans and the Lot Loan Securitizations as alleged herein.

133.    FGIC has been and will continue to be injured by Indymac's wrongful refusal to provide the properly requested  information, files and access.  Such damages, or at least some of which, cannot or may not be measured with sufficient certainty in money damages.

134.    FGIC is entitled to a declaration establishing the rights and obligations of the parties, including, but not limited to, that FGIC is entitled to access, documents and information as provided in the Lot Loan Insurance Agreements and requested herein concerning each of the Lot Loan Securitizations, and Indymac should be ordered to provide FGIC with immediate and continuing access to at least the following:

(i)    Lot Loan origination files, including all documents executed, provided or relied upon in connection with the origination of each Lot Loan;

(ii)     Lot Loan servicing files;

(iii)    Indymac's servicing notes and systems;

(iv)    Indymac's servicing officers and personnel with knowledge concerning the Lot Loans and the Lot Loan Securitizations;

(v)     Lot Loan data including information about the mortgaged lots and the borrower; and

(vi)    information relating to the Lot Loans and the origination and servicing thereof that is necessary to the enforcement of FGIC's rights and remedies.

## REQUESTS FOR RELIEF

**WHEREFORE**, Plaintiff FGIC respectfully requests that this Court enter its judgment against Indymac as follows:

**a.**     That FGIC be awarded damages against Indymac in the amount of at least $18,200,701 for the claims paid to the date of this Complaint under the 2006-2B Policy, the 2006-1 Policy and the 2008-H1 Policy as alleged herein;

**b.**     That FGIC be awarded damages against Indymac in the amount of all other claims paid or to be paid under the 2006-1, 2006-2B and 2006-H1 Policies that are caused by Indymac's breaches under the Transaction Documents or are subject to Indymac's indemnification obligations under the Insurance Agreements and Transaction Documents;

**c.**     That the Court find and declare that Indymac is required to pay and indemnify FGIC for all claims paid or to be paid under the Policies that are caused by Indymac's breaches under the Transaction Documents;

**d.**     That the Court find and declare that Indymac is required to pay and indemnify FGIC for all claims paid or to be paid under the 2006-2B Policy that result

from the denial or the rescission of coverage of a Covered Mortgage Loan under the Pool Policy;

e.        That the Court find and declare that Indymac is required to advance its own funds to the 2006-2B Trust within the time provided in the 2006-2B PSA respecting all present and future defaulted Covered Mortgage Loans in the 2006-2B Securitization for which coverage has been or will be denied or rescinded under the Pool Policy;

f.        That the Court order Indymac to immediately advance its own funds to the 2006-2B Trust in respect of all defaulted Covered Mortgage Loans in the 2006-2B Securitization for which coverage already has been denied or rescinded under the Pool Policy;

g.        That the Court order Indymac to advance its own funds to the 2006-2B Trust within the time provided in the 2006-2B PSA respecting all claims for defaulted Covered Mortgage Loans in the 2006-2B Securitization for which coverage is hereafter denied or rescinded under the Pool Policy;

h.        That the Court find and declare that Indymac is required to, and order Indymac to, immediately repurchase all August Defective Mortgage Loans, all December Defective Mortgage Loans, and to the extent that it has not advanced funds for such claims, all 2006-2B Rescinded Mortgage Loans;

i.        That the Court find and declare that Indymac is required to, and order Indymac to, repurchase any and all additional defective Mortgage Loans in the Securitizations that are discovered or identified after the date hereof that are required to be repurchased under the Transaction Documents;

**j.**     That FGIC be awarded damages against Indymac in the amount of all costs and expenses paid or to be paid by FGIC relating to discovery of Indymac's breaches or the enforcement of FGIC's rights, including without limitation attorney's and other professional fees, costs associated with FGIC's investigation of Mortgage Loan files and servicing (including, without limitation, RMG's costs and expenses) and the costs associated with this action;

**k.**     That the Court find and declare that Indymac is required to, and order Indymac to, file claims under the Pool Policy within the time required by the 2006-2B PSA;

**l.**     That the Court find and declare that Indymac is required to, and order Indymac to, not charge-off defaulted Covered Mortgage Loans in the 2006-2B Securitization for which coverage has been denied or rescinded under the Radian Pool Policy without Indymac advancing to the 2006-2B Trust for those Mortgage Loans;

**m.**     That the Court find and declare that Indymac is required to, and order Indymac to, comply with the Insurance Agreements, and allow FGIC all access, documents, files and information concerning the 2006-1, 2006-2B and 2006-H1 Securitizations and the Mortgage Loans in the Securitizations which FGIC has requested and is entitled to thereunder on an ongoing basis;

**n.**     That the Court find and declare that Indymac is required, and order Indymac,  to comply with the Lot Loan Insurance Agreements, and allow FGIC all access, documents, files and information concerning the Lot Loans and the Lot Loan Securitizations which FGIC has requested and is entitled to, on an ongoing basis; and

o.    That FGIC be awarded pre-judgment interest, the costs of this Action, including attorneys' fees, and such other and further relief that this Count may find to be just and proper.

*Respectfully submitted,*

**KUTAK ROCK LLP**

By: _____

ROBERT A. JAFFE
    (SDNY No. RJ 9286)
JOSEPH A. INGRISANO
    (pro hac vice to be applied for)
ANTOINETTE PICÓN HEWITT

300 East 42nd St. - 10th Floor
New York, N.Y.  10017
Tel.: (212) 922-9155    Fax: (212) 922-9157

1101 Connecticut Ave., N.W. - Suite 1000
Washington, D.C.  20036
Tel.: (202) 828-2400    Fax: (202) 828-2488

18201 Von Karman Ave. -  Suite 1100
Irvine, CA  92612
Tel.: (949) 417-0999    Fax: (949) 417-5394

Robert.Jaffe@KutakRock.com
Joseph.Ingrisano@KutakRock.com
Antoinette.Hewitt@KutakRock.com

**Counsel for Plaintiff,
Financial Guaranty Insurance Company**

**July 1, 2008**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---

**FINANCIAL GUARANTY INSURANCE COMPANY,**

Plaintiff,

v.

**INDYMAC BANK, F.S.B.,**

Defendant.

---

Civil Action No. 08-CV-06010-LAP

ECF Case

**COMPLAINT**

---

## COMPLAINT FOR BREACH OF CONTRACT, DAMAGES SPECIFIC PERFORMANCE AND DECLARATORY JUDGMENT

ROBERT A. JAFFE
  (SDNY No. RJ 9286)
JOSEPH A. INGRISANO
  (pro hac vice to be applied for)
ANTOINETTE PICÓN HEWITT

300 East 42nd St. - 10th Floor
New York, N.Y.  10017
Tel.: (212) 922-9155     Fax: (212) 922-9157

1101 Connecticut Ave., N.W. - Suite 1000
Washington, D.C.  20036
Tel.: (202) 828-2400     Fax: (202) 828-2488

18201 Von Karman Ave. -  Suite 1100
Irvine, CA  92612
Tel.: (949) 417-0999     Fax: (949) 417-5394

Robert.Jaffe@KutakRock.com
Joseph.Ingrisano@KutakRock.com
Antoinette.Hewitt@KutakRock.com

**Counsel for Plaintiff,**
**Financial Guaranty Insurance Company**

**July 1, 2008**

4811-6299-7250.3

COMPLAINT

**FINANCIAL GUARANTY INSURANCE COMPANY v. INDYMAC BANK, F.S.B.**

**COMPLAINT**

INTRODUCTION ............................................................... Page 1      (paras. 1 – 7)

PARTIES, JURISDICTION AND VENUE ......................................... Page 4      (paras. 8 – 12)

FACTUAL BACKGROUND ....................................................... Page 6      (paras. 12 – 16)

THE INDYMAC SECURITIZATIONS .................................... Page 9      (paras. 17 – 23)

INDYMAC's OBLIGATIONS UNDER THE TRANSACTION DOCUMENTS

    Indymac's Obligations Generally ................................... Page 13    (paras. 24 – 26)

    Access to Information and Documents ........................... Page 14    (para. 27)

    Radian Pool Policy ................................................... Page 15    (paras. 28 – 30)

    Indymac's Representations and Warranties ................... Page 17    (paras. 31 – 34)

    Prospectus Supplements .............................................. Page 21    (paras. 35 – 36)

    Indymac's Mortgage Loan Origination Practices ........... Page 23    (para. 37)

    Lot Loan Securitizations and Access ............................ Page 25    (para. 38)

INDYMAC's BREACHES

    Indemnification of Claims and Expenses Paid ............... Page 26    (paras. 39 – 46)

    Repurchase of Defective Mortgage Loans ..................... Page 29    (paras. 47 – 55)

    Failure to Advance Funds in the 2006-2B Securitization ............... Page 34    (paras. 56 – 61)

    Failure to Timely File Claims and Charge-Off of Mortgage Loans  Page 38    (paras. 62 – 67)

    Accuracy of Information / Breaches of Representations ................ Page 40    (para. 68)

    FGIC's Access Rights Under the Transaction Documents ............ Page 42    (paras. 69 – 74)

    FGIC's Access Rights Under the Lot Loan Securitizations .......... Page 44    (paras. 75 – 76)

CLAIMS FOR RELIEF

    FIRST Cause of Action - Failure to Indemnify ........................ Page 45    (paras. 77 – 90)

    SECOND Cause of Action - - Failure to Advance Funds .......... Page 48    (paras. 91 – 98)

    THIRD Cause of Action -  Failure to Repurchase .................... Page 49    (paras. 99 – 112)

    FOURTH Cause of Action - Failure to Timely File Claims ....... Page 52    (paras. 113 – 117)

    FIFTH Cause of Action - Inspection & Access - Securitizations  Page 53    (paras. 118 – 126)

    SIXTH Cause of Action - Inspection & Access – Lot Loans ..... Page 56    (paras. 127 – 134)

REQUESTS FOR RELIEF ..................................................... Page 58      (paras. a – o)

4811-6299-7250.3

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **FINANCIAL GUARANTY INSURANCE COMPANY,** <br><br> **Plaintiff,** <br><br> **v.** <br><br> **INDYMAC BANK, F.S.B.,** <br><br> **Defendant.** | Civil Action No. 0̶8̶-CV-06010-LAP <br><br> ECF Case <br><br><br> **COMPLAINT** |

## COMPLAINT FOR BREACH OF CONTRACT, DAMAGES
## SPECIFIC PERFORMANCE AND DECLARATORY JUDGMENT

Plaintiff Financial Guaranty Insurance Company ("**FGIC**"), as and for its Complaint against Defendant Indymac Bank, F.S.B. ("**Indymac**"), states and alleges as follows:

## INTRODUCTION

1.      FGIC is the financial guaranty insurer of approximately $1.4 billion of Notes and Certificates issued pursuant to three securitizations of Indymac originated mortgage home loans, of which Indymac is also the servicer.   The three mortgage home loan securitizations at issue in this action are the Indymac 2006-1, 2006-2B and 2006-H1 Securitizations (collectively, the "**Securitizations**", as more fully defined herein).

2.      As originator and servicer of the Mortgage Loans in the Securitizations, Indymac has contractual obligations to FGIC to perform certain duties, including: making payments to FGIC and/or the securitized trusts under the circumstances described in the Transaction Documents (as defined herein);  allowing FGIC access to certain documents and information concerning the Mortgage Loans and the Securitizations;  and properly servicing the Mortgage Loans assigned to the Securitizations.

3.      FGIC, as insurer, bears the risk under its Policies (as more fully defined herein) that cash flows from the assigned Mortgage Loans may be insufficient to make payments on the insured Notes and Certificates issued in the Securitizations; in which case, under the terms and conditions provided in the Insurance Policies (as defined herein), FGIC would be required to make payments to the insured trusts for the benefit of the insured Noteholders and Certificateholders.  As between FGIC and Indymac, however, FGIC does not contractually assume the risk that any of the securitized Mortgage Loans will not conform to Indymac's representations and warranties in the Transaction Documents (as defined herein), or the risk that Indymac will not comply with its obligations under the Transaction Documents.

4.      Indymac has clearly breached its contracts and violated the terms of its agreements with FGIC.  In one or more of each of the Securitizations, Indymac has: (i) failed to indemnify FGIC for claims paid and expenses incurred by FGIC caused by Indymac's breaches; (ii) knowingly and deliberately made false and material misrepresentations and omissions to FGIC concerning the Securitizations and the Mortgage Loans in the Securitizations; (iii) failed to repurchase or substitute for Mortgage Loans transferred to the Securitizations in breach of Indymac's representations and warranties in the relevant Transaction Documents; (iv) failed to advance monies relating to Mortgage Loans for which coverage has been denied or rescinded under the Radian Pool Policy (as defined herein) in the 2006-2B Securitization; (v) failed to submit claims under the Pool Policy within the time required under the 2006-2B Transaction Documents; and (vi) failed to allow FGIC access to critical documents and information to which FGIC is entitled under the Transaction Documents.

5.    Indymac's breaches of the Transaction Documents have materially damaged and adversely affected FGIC by, among other things, (i) causing the insured trusts to sustain losses, which would have not otherwise occurred, for which FGIC has been required to pay claims under its Policies, and for which FGIC expects to be required to pay further claims amounting to hundreds of millions of dollars; (ii) denying FGIC access to the documents and information it has a contractual right to receive to monitor its exposure and risk and exercise its rights in relation to the Securitizations; (iii) increasing FGIC's economic risk in the Securitizations by improperly causing reduced cash to be available to the insured trusts and causing FGIC to increase significantly its capital loss reserves; and (iv) causing FGIC to incur other expenses for which Indymac is liable.

6.    a.    FGIC is also the financial guaranty insurer of five other Indymac originated securitizations (as more fully defined herein, the "**Lot Loan Securitizations**"), involving "**Lot Loans**" (as more fully defined herein).

b.    Indymac has contractual obligations to FGIC to allow FGIC access to certain documents and information concerning the Lot Loans and the Lot Loan Securitizations.

c.    Indymac has breached its contracts and violated the terms of its agreements with FGIC in the Lot Loan Securitizations by failing to allow FGIC access to documents and information to which FGIC is entitled concerning the Lot Loans and the Lot Loan Securitizations.

d.    Indymac's breaches have materially damaged and adversely affected FGIC by denying FGIC access to the documents and information it has a contractual right to

receive to monitor its exposure and risk and exercise its rights in relation to the Lot Loan Securitizations and by increasing FGIC's economic risk in the Lot Loan Securitizations.

e.    In addition to the three mortgage home loan Securitizations and the five Lot Loan Securitizations at issue in this action, FGIC has also issued an insurance policy for another securitization of Indymac originated mortgage back securities.

7.    There has arisen an actual, concrete and justiciable controversy between FGIC and Indymac regarding Indymac's obligations under the Transaction Documents in relation to each of the Securitizations and regarding each of the Lot Loan Securitizations; and FGIC will suffer continuing harm if Indymac is not ordered to perform its obligations.  While FGIC has honored all of its obligations, Indymac has failed to live up to its contractual responsibilities.  As more specifically pled herein, these controversies and harms are of such a nature and sufficiency for this Court to enter the declaratory judgments and to award the specific performances requested herein.

## PARTIES, JURISDICTION AND VENUE

8.    a.    FGIC is a stock insurance corporation organized under the laws of the State of New York with its principal place of business at 125 Park Avenue, New York, New York 10017.

b.    As a New York domiciled financial guaranty insurance company, FGIC is registered with the New York State Insurance Department and thus subject to the insurance laws and regulations of the State of New York, including New York's comprehensive financial guaranty insurance law.  N.Y. Ins. Law Art. 69.  As a financial guaranty insurance company, FGIC works closely with state and local governments, both in the United States

and around the world, to provide financial guaranties that lower those governments' borrowing costs and enhance their access to the capital markets. This enhanced access enables governments to obtain financing for schools, roads, utilities, hospitals and other important necessary public works projects. In addition to providing financial guaranties on municipal bonds and other public infrastructure financings, FGIC provides credit enhancement for select structured finance securities.

9.    a.    Indymac is a federal savings bank, which, on information and belief, has its principal place of business at 888 East Walnut Street, Pasadena, California 91101.

b.    Indymac is a wholly-owned subsidiary of Indymac Bancorp Inc. (NYSE: IMB), a Fortune 1000 company with over $29 billion in assets (2007). Indymac Bancorp was founded as Countrywide Mortgage Investments Inc., an affiliate of and originally managed by Countrywide Credit Industries Inc., which is now known as Countrywide Financial Corp., the parent of Countrywide Home Loans Inc.

10.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 and 12 U.S.C. § 1464(x) in that there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, collectively, as to each Securitization and as to the Lot Loan Securitizations, exclusive of interest and costs.

11.    Venue is proper in this District and this Court has personal jurisdiction over Indymac pursuant to 28 U.S.C. § 1391(a) and by Indymac's written consent and waiver of any objection to jurisdiction and venue in this District and this Court for any legal proceedings relating to the contracts between Indymac and FGIC at issue in this action.

## FACTUAL BACKGROUND

12.    Indymac is an originator and servicer of residential mortgage loans and is one of the ten largest mortgage loan originators and servicers in the United States.

13.    Indymac commonly sold the mortgage loans it originated or acquired to trusts in securitization transactions.  In particular, Indymac sold certain home mortgage loans it acquired or originated to trusts in the following three securitizations: (i) the Home Equity Mortgage Loan Asset-Backed Trust, Series INDS 2006-1 (the "**2006-1 Securitization**"); (ii) the Home Equity Mortgage Loan Asset-Backed Trust, Series INDS 2006-2B (the "**2006-2B Securitization**") and (iii) the Home Equity Mortgage Loan Asset-Backed Trust, Series INDS 2006-H1 (the "**2006-H1 Securitization**") (the 2006-1 Securitization, the 2006-2B Securitization and the 2006-H1 Securitization are collectively referred to as the "**Securitizations**").

14.    "Securitization involves the transfer of assets with reasonably predictable cash flows to a separate special purpose entity, which then sells debt securities backed by the cash flows from those assets on the capital markets." *In re Scottish Re Group Securities Litigation*, 524 F.Supp.2d 370, 376 (S.D.N.Y. 2007).  "Although securitization can take various forms, most securitization arrangements involve certain basic players: a transferor, the initial owner of the assets; a special purpose vehicle ("SPV"), which the transferor creates to purchase and hold the assets; and investors, who purchase securities issued by the SPV. ... All securitizations are based on documents that define the duties and obligations that transferors, SPVs, and investors owe one another." *Bank of New York v. F.D.I.C.*, 453 F.Supp.2d 82, 86 (D.D.C. 2006) (internal citations and quotations omitted). "Securitization[s] are protected by certain 'credit enhancements,' such as cash collateral

accounts and insurance policies, that ensure payment of an investor's principal and interest if the cash flow from the securitized receivables proves insufficient." *In re Spiegel, Inc. Securities Litigation*, 2005 WL 1838449, *4 (N.D. Ill. 2005).

15.   **a.**   A mortgage loan securitization involves the sale of a pool of mortgage loans by an originator of the loans, such as Indymac, to a trust or other entity.  The trust acquires and owns the mortgage loans and issues notes or other securities that are backed by, or that rely directly, and generally solely, on the mortgage loans and related collections as the source of payment for the securities.  In some mortgage loan securitizations, a financial guaranty insurer, such as FGIC, will issue a financial guaranty insurance policy guaranteeing payments on one or more classes of securities (notes) issued by the trust to third party investors (the noteholders). (As used herein references to 'Notes' or 'Noteholders' will refer to both Notes and Certificates or to Noteholders and Certificateholders, as the case may be.)

**b.**   Based on its experience in servicing mortgage loans, the originator of the mortgage loans is often retained as servicer.  The servicer is responsible for, among other things, collecting payments on the mortgage loans on behalf of the trust; administering tax and insurance escrows; working out defaulted mortgage loans and foreclosing on the related properties when no satisfactory arrangements can be made for the collection of delinquent mortgage loan payments; and keeping records for and providing information to the securitized trusts and other parties in the Securitization.  If a mortgage loan securitization involves a pool policy -- a separate insurance policy guaranteeing payment of principal and interest on individual defaulted mortgage loans -- the servicer's responsibility will also include administering and submitting claims under the pool policy on behalf the trustee and on behalf of any financial guaranty insurer as beneficiaries of the pool policy.

16.     In the three mortgage home loan securitizations at issue in this action, Indymac has numerous obligations under the Transaction Documents as seller of the Mortgage Loans and as Servicer of the Mortgage Loans. These obligations include, but are not limited to, the following:

a.     Indymac is required to repurchase certain defective Mortgage Loans that do not comply with representations and warranties of Indymac contained in the Transaction Documents.

b.     Indymac is required to timely advance funds to the 2006-2B Trust based on, among other things, all claims for defaulted Covered Mortgage Loans in the 2006-2B Trust for which coverage is denied or rescinded under the Second Mortgage Pool Insurance Policy (the "**Radian Pool Policy**" or "**Pool Policy**") issued by Radian Insurance Inc. ("**Radian**"). (Mortgage Loans for which coverage is or should be available under the Pool Policy are referred to as "**Covered Mortgage Loans**.")

c.     Indymac is required to indemnify FGIC for losses and damages based on Indymac's breaches of the Transaction Documents, including, without limitation, claims paid by FGIC under the Policies that are caused by Indymac's breaches, and FGIC's related monitoring and enforcement costs and expenses.

d.     Indymac is required to indemnify FGIC for any expenses, claims or liabilities incurred by FGIC as a result of a Covered Mortgage Loan in the 2006-2B Securitization as to which coverage is denied or rescinded under the Pool Policy.

e.     Indymac is required to submit claims for defaulted Mortgage Loans in the 2006-2B Trust under the Pool Policy within the time required by the 2006-2B PSA.

f.     Indymac is required: to provide FGIC and its agents with access to Mortgage Loan files and records and Indymac's servicing office and personnel; to allow FGIC to conduct loan file reviews and servicing audits; and to provide FGIC with certain data, records and information concerning the Mortgage Loans and the Securitizations.

g.     Indymac is required to service the Mortgage Loans consistent with the Transaction Documents and with the same degree of skill and care respecting mortgage loans that are serviced by Indymac for itself or others.

## THE INDYMAC SECURITIZATIONS

17.     On or about April 1, 2006, the Home Equity Mortgage Loan Asset-Backed Trust, Series INDS 2006-1 (the "**2006-1 Trust**") was created in connection with the 2006-1 Securitization and the following documents were entered into in connection with the 2006-1 Securitization (along with other documents entered into in connection with the 2006-1 Securitzation, the "**2006-1 Transaction Documents**"):

a.     The Pooling and Servicing Agreement ("**2006-1 PSA**").

b.     The Insurance and Indemnity Agreement ("**2006-1 Insurance Agreement**") and a Financial Guaranty Insurance Policy (the "**2006-1 Policy**").

18.     a.     Pursuant to the 2006-1 Securitzation and the 2006-1 Transactions Documents, certain Mortgage Loans (the "**2006-1 Mortgage Loans**") were transferred and assigned by Indymac to the 2006-1 Trust and the Trust issued "Notes" to the insured "Noteholders", who paid approximately $298,611,000, which monies were used to pay Indymac for the sale and assignment of the 2006-1 Mortgage Loans.

b.      FGIC issued the 2006-1 Policy to the trustee of the 2006-1 Trust for the benefit of the insured Class A Noteholders.   FGIC insured Notes in the amount of approximately $194,930,525 are currently outstanding for the 2006-1 Securitization.

19.     On or about September 1, 2006, the Home Equity Mortgage Loan Asset-Backed Trust, Series INDS 2006-2B (the "**2006-2B Trust**") was created in connection with the 2006-2B Securitization and the following documents were entered into in connection with the 2006-2B Securitization (along with other documents entered into in connection with the 2006-2B Securitzation, the  "**2006-2B Transaction Documents**"):

a.      The Pooling and Servicing Agreement ("**2006-2B PSA**").

b.      The Insurance and Indemnity Agreement ("**2006-2B   Insurance Agreement**") and a Financial Guaranty Insurance Policy (the "**2006-2B Policy**").

20.     **a.**     Pursuant to the 2006-2B Securitzation and the 2006-2B Transactions Documents, certain Mortgage Loans (the "**2006-2B Mortgage Loans**") were transferred and assigned by Indymac to the 2006-2B Trust and the Trust issued "Notes" to the insured "Noteholders", who paid approximately $585,242,000, which monies were used to pay Indymac for the sale and assignment of the 2006-2B Mortgage Loans.

b.      FGIC issued the 2006-2B Policy to the trustee of the 2006-2B Trust for the benefit of the insured Class A Noteholders.   FGIC insured Notes in the amount of approximately $439,049,899 are currently outstanding for the 2006-2B Securitization.

21.     On or about March 1, 2006, the Home Equity Mortgage Loan Asset-Backed Trust, Series INDS 2006-H1 (the "**2006-H1 Trust**") was created in connection with the 2006-H1 Securitization and the following documents were entered into in connection with

the 2006-H1 Securitization (along with other documents entered into in connection with the 2006-1 Securitzation, the "**2006-H1 Transaction Documents**") (the 2006-1 Transaction Documents, the 2006-2B Transaction Documents and the 2006-H1 Transaction Documents are collectively referred to as the "**Transaction Documents**"):

      **a**.     The Mortgage Loan Purchase Agreement ("**2006-H1 MLPA**") and the Sale and Servicing Agreement ("**2006-H1 SSA**") (the 2006-H1 MLPA and the 2006-H1 SSA contain provisions, and perform functions, similar to the PSA's in the 2006-1 and 2006-2B Securitizations).  (The 2006-1 PSA, the 2006-2B PSA, the 2006-H1 MLPA and the 2006-H1 SSA  are collectively referred to as the "**PSA's**". )

      **b**.     The Insurance and Indemnity Agreement ("**2006-H1 Insurance Agreement**") (the 2006-1 Insurance Agreement, the 2006-2B Insurance Agreement and the 2006-H1 Insurance Agreement are collectively referred to as the "**Insurance Agreements**") and a Financial Guaranty Insurance Policy (the "**2006-H1 Policy**").  (The 2006-1 Policy, the 2006-2B Policy and the 2006-H1 Policy are collectively referred to as the "**Policies**".)

      **22.**    **a.**     Pursuant to the 2006-H1 Securitzation and the 2006-H1 Transactions Documents, certain Mortgage Loans (the "**2006-H1 Mortgage Loans**") were transferred and assigned by Indymac to the 2006-H1 Trust and the Trust issued "Notes" to the insured "Noteholders", who paid approximately $490,253,000, which monies were used to pay Indymac for the sale and assignment of the 2006-H1 Mortgage Loans.  (The 2006-1 Mortgage Loans, the 2006-2B Mortgage Loans and the 2006-H1 Mortgage Loans are collectively referred to as the "**Mortgage Loans**".)

**b.**    FGIC issued the 2006-H1 Policy to the trustee of the 2006-H1 Trust for the benefit of the insured Class A Noteholders.  FGIC insured Notes in the amount of approximately $231,276,793 are currently outstanding for the 2006-H1 Securitization.

**23.**  **a.**    FGIC has fulfilled all, and is not in breach, of its obligations under 2006-1 Policy, the 2006-2B Policy, the 2006-H1 Policy and is not in breach of any obligation under Insurance Agreements or any of the other Transaction Documents.  FGIC has paid claims under the 2006-2B Policy, the 2006-1 Policy and the 2006-H1 Policy, and FGIC is prepared to fulfill all its obligations to the insured Noteholders and pay any future claims under all the Policies.  Additionally, FGIC is prepared to fulfill any other obligation under the Insurance Agreements.

**b.**    FGIC is an express third-party beneficiary of the PSA's and has the right to enforce all of its rights and, as Indymac agreed in the PSA's, the rights of the Noteholders thereunder.  In the Insurance Agreements, Indymac agreed and acknowledged that FGIC is a third-party beneficiary of the PSA's.

**c.**    In this action FGIC is enforcing its rights as a party to the Insurance Agreements for breaches by Indymac of those Agreements.  FGIC is also enforcing, and has standing to enforce, its rights as an express third-party beneficiary of the PSA's and other Transaction Documents for Indymac's breaches of those Documents.  FGIC also has standing to enforce the rights of the Noteholders under the PSA's, and may seek to enforce such rights in this action.

**INDYMAC's OBLIGATIONS UNDER THE TRANSACTION DOCUMENTS**

**Indymac's Obligations Generally**

24.    a.    Under the Insurance Agreements, Indymac is required to indemnify FGIC for all claims paid by FGIC under the Insurance Policies that are caused by or by reason of: (i) any breach by Indymac of its representations or warranties in the Transactions Documents; (ii) any untrue statement or material omission by Indymac; or (iii) any misfeasance or other wrongful act by Indymac in relation to the Securitizations.

b.    Also, under the 2006-2B PSA, Indymac is required to indemnify FGIC for all claims paid by FGIC under the Insurance Policies that are caused by or by reason of the denial of any claim, or the rescission of coverage of a Covered Mortgage Loan, under the Pool Policy.

25.    a.    Under the PSA's, Indymac is required to repurchase or substitute for defective Mortgage Loans that breach representations and warranties of Indymac in the Transaction Documents.

b.    Such Mortgage Loans must be repurchased: (i) in some cases, where the breaches materially and adversely affect the interests of the Noteholders or FGIC in any Mortgage Loan; (ii) in some cases, where the breaches materially and adversely affect the value of such Mortgage Loan; (iii) in some cases, because the breaches are deemed to be material and adverse under the Transaction Documents; and (iv) in some cases, without regard to the materiality of the breach.

26.    a.    Under the 2006-2B PSA, Indymac is required to advance funds to the 2006-2B Trust for Covered Mortgage Loans for which coverage is denied or rescinded by

Radian under the Pool Policy, and to advance such funds within the time specified in the 2006-2B PSA.

      **b.**     Under the 2006-2B PSA, Indymac is required to administer the Radian Pool Policy, including timely filing claims under the Pool Policy, at the time specified in the 2006-2B PSA.

      **c.**     Under the PSA's, Indymac is required to properly service the Mortgage Loans and perform other duties.

**Access to Information and Documents**

    **27.**    **a.**     The Insurance Agreements also require Indymac to provide information and make available documents to FGIC concerning the applicable Securitizations, the respective Mortgage Loans and related files, records and data, and information and documents respecting Indymac's records as originator/seller and Servicer of the Mortgage Loans, permit FGIC to review the Mortgage Loans, and permit FGIC continuing access rights to Indymac's facilities and records.

      **b.**     Indymac further covenants in the Insurance Agreements that Indymac will cooperate with, and not interfere with, the enforcement of FGIC's rights.

      **c.**     FGIC negotiated and required these broad access and information rights and Indymac's covenant to cooperate in order to be able to determine, among other things, whether there are Mortgage Loans in the Securitizations that Indymac is required to repurchase for representation or warranty breaches and whether Indymac as Servicer is servicing the Mortgage Loans in accordance with the applicable Transaction Documents.

**d.**     These access, information and cooperation rights are essential for FGIC, as without such access,  information and cooperation, FGIC would have no independent way of verifying Indymac's compliance with or determining any violations of the various Transaction Documents, or monitoring or assessing its own exposure and risk in the Securitizations.

**e.**     FGIC is being and will continue to be injured by Indymac's wrongful refusal to provide FGIC with access to the required files, documents and information concerning the Securitizations and the Mortgage Loans.

**Radian Pool Policy**

**28.     a.**     The Radian Pool Policy issued in the 2006-2B Securitization provides mortgage insurance protection against defaults on the securitized Mortgage Loans covered thereunder ("**Covered Mortgage Loans**"), thereby providing protection to FGIC from the 2006-2B Trust having insufficient assets to pay principal and interests on the Notes.

**b.**     According to the representations and warranties made by Indymac in the 2006-2B PSA, approximately 97.5% of the mortgage loans in the 2006-2B Trust are Covered Mortgage Loans and are eligible for coverage under the Pool Policy.  The Radian Pool Policy was required by FGIC as a condition to delivering its 2006-2B Insurance Policy. The Pool Policy was issued and delivered for the benefit of FGIC and FGIC is an express third-party beneficiary of the Pool Policy.

**c.**     The Pool Policy insures, subject to its terms, payment to the 2006-2B Trust of principal and interest on defaulted "Covered Mortgage Loans" in the 2006-2B Securitization where Mortgage Loan borrowers fail to make their monthly payments under the

Mortgage Loans. The Pool Policy, insuring Mortgage Loan payments, is separate from and different than FGIC's Policies, which insure payment of principal and interest on the Notes.

29.     a.     Indymac represented and warranted for the benefit of FGIC that all Covered Mortgage Loans are eligible for coverage under the Pool Policy and that all of the representations and warranties in the Pool Policy concerning the Mortgage Loans are correct. 2006-2B PSA, Sections 2.03 and 2.04. Such representations, warranties and other covenants place the risk of claim denials under the Pool Policy on Indymac as originator/servicer, and any such denial or rescission under the Pool Policy is deemed to have a material affect under the 2006-2B PSA.

b.     In issuing the 2006-2B Policy, FGIC relied on the representation and warranty made by Indymac, including that each Covered Mortgage Loan was eligible for coverage under the Pool Policy.

c.     On information and belief, Indymac made the representation that all Covered Mortgage Loans were eligible for coverage under the Pool Policy without reasonable grounds for believing it to be true and in order to induce FGIC to rely on such misrepresentations and omissions and issue the 2006-2B Insurance Policy.

30.     The 2006-2B PSA contains provisions requiring Indymac to, among other things:

a.     Advance funds to the 2006-2B Trust for Covered Mortgage Loans for which coverage is denied or rescinded by Radian under the Pool Policy (without any right of reimbursement from the Trust). 2006-2B PSA, section 4.01(d);

**b.**    Make such required advancement of funds by the monthly Distribution Date (as defined in the 2006-2B PSA) immediately following the denial or rescission. 2006-2B PSA, section 4.01(d);

**c.**    File claims under the Pool Policy when the Covered Loans become four months overdue, as specified in the PSA. 2006-2B PSA, section 3.04; and

**d.**    Indemnify FGIC and 2006-2B Trust for claims, expenses or liabilities incurred as a result of the denial, rejection or rescission of a Covered Mortgage Loan under the Pool Policy. 2006-2B PSA, sections 2.03 and 3.04.

**Indymac's Representations and Warranties**

**31.**    The Insurance Agreements contain at least the following representations and warranties, affirmative covenants and negative covenants of Indymac to and for the benefit of FGIC:

**a.**    Indymac represents that statements made by it and information provided by it in relation to the each Securitization and the Mortgage Loans in each Securitization are all materially true and accurate.

**b.**    In the Insurance Agreements, Indymac repeats and incorporates therein to and for the benefit of FGIC, each of Indymac's representations and warranties in the other respective Transaction Documents, including the PSA's, and Indymac covenants to properly perform its obligations under such Transaction Documents.

**c.**    In addition to the foregoing, Indymac represents and warrants to FGIC that neither the Transaction Documents, the related offering document (Prospectus Supplements, as defined herein), nor other material information relating to the Mortgage

Loans or Indymac's operations that were provided to FGIC by Indymac in writing or in electronic form contained any material fact that was untrue or misleading in any material respect.

32.    The following are among Indymac's representations and warranties made in Transactions Documents that are repeated and incorporated in the Insurance Agreements for the benefit of FGIC:

a.    That the Mortgage Loans were each underwritten in accordance with Indymac's mortgage origination guidelines, and were not selected for inclusion in the Securitization in a manner intended to adversely affect the interests of the Noteholders.

b.    That the information provided as to each Mortgage Loan was true and correct in all materials respects.

c.    In the 2006-2B PSA, Indymac represented and warranted that each 2006-2B Covered Mortgage Loan was eligible for coverage under the Radian Pool Policy.

d.    (i)    In addition, in the 2006-2B PSA, Indymac represented and warranted that the representations and warranties made in the Radian Pool Policy (including Exhibit A thereto) were true and correct.

(ii)    Included among such representations and warranties in the Pool Policy are: that each Covered Mortgage Loan was underwritten consistent with Indymac's Underwriting Guidelines; that there was no fraud, dishonesty or misrepresentation in connection with the origination of any Covered Mortgage Loan; and that each Covered Mortgage Loan meets the Eligibility Criteria for coverage under the Pool Policy.

    **e.**    **(i)**    In the 2006-1 and the 2006-2B Securitizations, Indymac also represented and warranted with respect to each 2006-1 and 2006-2B Mortgage Loan that to the best of Indymac's knowledge there was no fraud, error, omission, misrepresentation, negligence or similar occurrence of Indymac, the related borrower or any other party in connection with the origination of such Mortgage Loan.

    **(ii)**    In addition, as to the 2006-2B Mortgage Loans, by its adoption of the representations and warranties in the Pool Policy, Indymac represented and warranted that there was no fraud, dishonesty or misrepresentation by any person in connection with the origination of any 2006-2B Covered Mortgage Loans as to which 12 scheduled payments have not been made, without regard to Indymac's knowledge of any such fraud, dishonesty or misrepresentation.

    **(iii)**    In the 2006-H1 Securitization, Indymac represented and warranted that with respect to each 2006-H1 Mortgage Loan there was no fraud, error, omission, misrepresentation, negligence or similar occurrence of Indymac, the related borrower or any other party in connection with the origination of such 2006-H1 Mortgage Loan, without regard to Indymac's knowledge of any such fraud, error, omission, misrepresentation, negligence or similar occurrence.  2006-H1 PSA, sections 2.04(b) and (c).

    **(iv)**    By the above representations in the 2006-2B and 2006-H1 Securitizations, Indymac agreed to assume the risk of fraud or misrepresentation on the part of any party involved in the origination of a 2006-2B Covered Mortgage Loan or a 2006-H1 Mortgage Loan, including fraud and misrepresentation by the borrower in obtaining the Mortgage Loan, whether or not Indymac had knowledge of the fraud or misrepresentation at the time that the representation or warranty was made.

33.    **a.**    The Insurance Agreements require Indymac to indemnify FGIC for payments and losses based on Indymac's breaches of the Transaction Documents, as specified therein.

**b.**    These amounts for which Indymac is liable to indemnify FGIC include payments by FGIC for any claims made under the Polices that are caused by or result from such breaches by Indymac, as well as attorney's fees, consultant's fees and other costs and expenses incurred by FGIC in discovering Indymac's defaults and enforcing FGIC's rights, including the costs and attorney's fees associated with this action.

34.    **a.**    Insurers, such as FGIC, rely on such representations and warranties made by the originator in determining whether to issue a policy for any given securitization. Insurers such as FGIC also rely on the mortgage loan data and loan performance information provided by an originator such as Indymac in determining whether to issue a policy in respect to any given securitization, the originator being the primary if not sole source of mortgage loan data available to the insurer in modeling the proposed securitization.

**b.**    FGIC did rely on Indymac's foregoing representation and warranties, and other statements and information provided by Indymac concerning the respective Mortgage Loans and Securitizations, in making FGIC's decisions to issue the 2006-1 Policy, the 2006-2B Policy and the 2006-H1 Policy.  Upon information and belief, Indymac knew, expected and intended that FGIC would so rely upon the Indymac's representations, warranties, statements and information.

**c.**    FGIC was justified in relying on Indymac's representations and statements, and on the accuracy and completeness of those representations and statements; and FGIC did not know the representations and statements to be false and misleading.  At the

time of Indymac's misrepresentations and material omissions, due to FGIC's and Indymac's contracts and relationships on the proposed and prior mortgage loan securitizations, and because of Indymac's knowledge and information of the true and complete facts, Indymac had a duty and obligation to provide FGIC with complete and accurate information.

d.    On information and belief, Indymac knew that if FGIC had known that Indymac's representations and warranties were false or materially misleading, or knew that the information supplied by Indymac was inaccurate and incomplete, FGIC would not have issued the Policies and Indymac knew that FGIC was going to rely on Indymac's representations, warranties, statements and information and rely on Indymac to provide complete material information, in making FGIC's decision to insure the Securitizations.

**Prospectus Supplements**

35.    a.    In connection with the 2006-2B Securitization, Indymac had prepared a Prospectus Supplement dated on or about September 18, 2006, which Prospectus Supplement supplemented a Base Prospectus dated on or about June 14, 2006 (this Prospectus Supplement, together with the Base Prospectus, is referred to as the "**2006-2B Prospectus Supplement**").

b.    In connection with the 2006-1 Securitization, Indymac had prepared a Prospectus Supplement dated on or about June 22, 2006, which Prospectus Supplement supplemented a Base Prospectus dated on or about June 14, 2006 (this Prospectus Supplement, together with the Base Prospectus, is referred to as the "**2006-1 Prospectus Supplement**").

c.    In connection with the 2006-H1 Securitization, Indymac had prepared a Prospectus Supplement dated on or about March 30, 2006, which Prospectus Supplement

supplemented a Base Prospectus dated on or about August 22, 2005 (this Prospectus Supplement, together with the Base Prospectus, is referred to as the "**2006-H1 Prospectus Supplement**").

36.    **a.**    **(i)**    In connection with the 2006-1 Securitization, Indymac had or caused to be delivered to FGIC a copy of the 2006-1 Prospectus Supplement.  **(ii)**    In connection with the 2006-2B Securitization, Indymac had or caused to be delivered to FGIC a copy of the 2006-2B Prospectus Supplement.    **(iii)**    In connection with the 2006-H1 Securitization, Indymac had or caused to be delivered to FGIC a copy of the 2006-H1 Prospectus Supplement.

**b**.    **(i)**  In connection with the 2006-1 Securitization, Indymac represented to FGIC that the statements in the 2006-1 Prospectus Supplement were true and correct, and that the 2006-1 Prospectus Supplement  did not omit to state any material fact necessary to make the statements made therein, in light of the circumstances in which they were made, not misleading.    **(ii)**    In connection with the 2006-2B Securitization, Indymac represented to FGIC that the statements in the 2006-2B Prospectus Supplement were true and correct, and that the 2006-2B Prospectus Supplement did not omit to state any material fact necessary to make the statements made therein, in light of the circumstances in which they were made, not misleading. **(iii)**  In connection with the 2006-H1 Securitization, Indymac represented to FGIC that the statements in the 2006-H1 Prospectus Supplement were true and correct, and that the 2006-H1 Prospectus Supplement did not omit to state any material fact necessary to make the statements made therein, in light of the circumstances in which they were made, not misleading.

c.    **(i)**    FGIC relied on the statements in the 2006-1 Prospectus Supplement in making its decision to issue the 2006-1 Policy, and upon Indymac's representations concerning the truthfulness and completeness of the 2006-1 Prospectus Supplement. Upon information and belief, Indymac knew, expected and intended that FGIC would so rely upon the 2006-1 Prospectus Supplement and Indymac's representations.    **(ii)** FGIC relied on the statements in the 2006-2B Prospectus Supplement in making its decision to issue the 2006-2B Policy, and upon Indymac's representations concerning the truthfulness and completeness of the 2006-2B Prospectus Supplement. Upon information and belief, Indymac knew, expected and intended that FGIC would so rely upon the 2006-2B Prospectus Supplement and Indymac's representations.    **(iii)**    FGIC relied on the statements in the 2006-H1 Prospectus Supplement in making its decision to issue the 2006-H1 Policy, and upon Indymac's representations concerning the truthfulness and completeness of the 2006-H1 Prospectus Supplement. Upon information and belief, Indymac knew, expected and intended that FGIC would so rely upon the 2006-H1 Prospectus Supplement and Indymac's representations.

**Indymac's Mortgage Loan Origination Practices**

**37.**    **a.**    Upon information and belief, numerous former Indymac employees with knowledge of Indymac's mortgage loan origination procedures during the period in which the Mortgage Loans in the Securitizations at issue in this action were originated by Indymac, have made statements in relation to another federal civil action brought against Indymac to the effect that Indymac knowingly originated and securitized improper, fraudulent and below standard mortgage loans.

**b**.    These statements include:

(i)    that Indymac institutionalized exceptions to its own underwriting guidelines that allowed Indymac to make and approve mortgage loans that should have been denied under the actual guidelines and that direct fraud by Indymac loan sales representatives was rampant in the mortgage loan origination process at Indymac (former Indymac central banking group vice-president);

(ii)    that Indymac's loan origination process had evolved into organized chaos where, at management's direction, anything went to close loans that would not normally be made, including adjusting appraisals to make the loan work (former Indymac loan underwriter);

(iii)    that in order to keep pace with its competition, Indymac greatly loosened its underwriting guidelines in order to bring in more loans (former Indymac vice-president in Indymac's mortgage banking segment);

(iv)    that an increasing number of loans were made through apparently fraudulent or misrepresented documentation and there was an increase in defaults because of these misrepresentations in the underwriting process, the relaxation of the underwriting guidelines and approval of borderline loans (former Indymac senior auditor in Indymac's central mortgage operations);

(v)    that the quality of Indymac's loan origination process had become a running joke within Indymac, and that a whole class of Indymac originated mortgages were referred to internally as 'Disneyland Loans', because of insufficient documentation or the borrower's inability to repay the mortgage (former Indymac investigator in Indymac's central mortgage operations); and

(iv)    that the increase in the number of Indymac originated delinquent loans was due to misrepresentations and fraud occurring in the mortgage loan origination process (former Indymac senior loan processor).

c.    Upon information and belief, the same knowingly improper mortgage loan origination procedures described by these numerous former Indymac employees were used by Indymac to make many of the delinquent and defaulted loans in the FGIC-insured Securitizations at issue in this action, and the rate of delinquencies and defaults in the FGIC-insured Securitizations, and thus FGIC's claim payments and other losses in relation to those Securitizations, is due to Indymac's knowingly improper mortgage loan origination process.

**Lot Loan Securitizations and Access**

**38.**    **a.**    FGIC is also the financial guaranty insurer on five Indymac originated Securitizations concerning Lot Loans: (i) the Indymac Residential Mortgage Backed Trust Series 2004-L1; (ii) the Indymac Residential Mortgage Backed Trust Series 2005-L1; (iii) the Indymac Residential Mortgage Backed Trust Series 2005-L2; (iv) the Indymac Residential Mortgage Backed Trust Series 2005-L3; and (v) the Indymac Residential Mortgage Backed Trust Series 2006-L2 (collectively, the "**Lot Loans Securitizations**").  A "**Lot Loan**" involves a mortgage loan secured by a specified parcel of developed real property on which no house has yet been constructed but on which the borrower intends to build a house.

**b.**    FGIC issued policies of insurance in relation to each of the Lot Loan Securitizations (each, a "**Lot Loan Insurance Policy**"; collectively, the "**Lot Loan Insurance Policies**").  In connection with, and as a precondition to, the issuance of each Lot Loan Insurance Policy, FGIC and Indymac entered into an Insurance Agreement in relation

to each Lot Loan Securitization (each, a "**Lot Loan Insurance Agreement**"; collectively, the "**Lot Loan Insurance Agreements**").

   **c.** The FGIC insured Notes in the Lot Loan Securitizations totaled approximately $1.1 billion, of which a combined approximately $333,558,200 in FGIC insured Notes are currently outstanding.

   **d.** The Lot Loan Insurance Agreements require Indymac to provide information and make available documents to FGIC concerning the applicable Lot Loan Securitizations, the respective Lot Loans and related files, records and data, and information and documents respecting Indymac's records as originator/seller and Servicer of the Lot Loans, and permit FGIC continuing access rights to Indymac's facilities and records. FGIC relied on Indymac's obligation to provide information and make available documents to FGIC concerning the applicable Lot Loan Securitizations and the respective Lot Loans in issuing each of the Lot Loan Insurance Policies.

## INDYMAC's BREACHES

### Indemnification of Claims and Expenses Paid Under the Insurance Policies

  **39.** **a.** **(i)** On or about April 28, 2008, FGIC paid a claim under the 2006-2B Policy in the amount of $4,203,788.

    **(ii)** On or about May 27, 2008, FGIC paid a claim under the 2006-2B Policy in the amount of $1,697,333.

    **(iii)** On or about June 25, 2008, FGIC paid a claim under the 2006-2B Policy in the amount of $5,381,565.

(iv)    To date, FGIC has paid claims under the 2006-2B Policy in the total amount of approximately $11,282,687.

b.    (i)    On or about May 27, 2008, FGIC paid a claim under the 2006-1 Policy in the amount of $1,109,409.

(ii)    On or about June 25, 2008, FGIC paid a claim under the 2006-1 Policy in the amount of $778,149.

(iii)    To date, FGIC has paid claims under the 2006-1 Policy in the total amount of approximately $1,887,559.

c.    (i)    On or about June 25, 2008, FGIC paid a claim under the 2006-H1 Policy in the amount of $5,030,455.

(ii)    To date, FGIC has paid claims under the 2006-H1 Policy in the total amount of approximately $5,030,455.

d.    To date, FGIC has paid combined claims on the 2006-2B Policy, the 2006-1 Policy and the 2006-H1 policy of a total of approximately $18,200,701.

40.    a.    But for Indymac's continuing breaches and defaults complained of herein, no claims would have been made or paid under the 2006-2B Policy

b.    In the alternative, but for Indymac's continuing breaches and defaults complained  of herein, claims in the amounts paid by FGIC would not have been made or paid under the 2006-2B Policy.

c.    But for Indymac's continuing breaches and defaults complained of herein, no claim would have been made or paid under the 2006-1 Policy.

**d.**     Upon information and belief, but for Indymac's continuing breaches and defaults complained of herein, no claim would have been made or paid under the 2006-H1 Policy.

**41.**     **a.**     FGIC expects to be required to pay further claims under the 2006-2B Policy, the 2006-1 Policy and the 2006-H1 Policy.

**b.**     These additional and further claims are due in whole or in part to Indymac's breaches of its representations, warranties, covenants and obligations.

**42.**     **a.**     FGIC expects that, if Indymac continues to breach its obligations under the Transaction Documents, the additional claims FGIC will pay will be hundreds of millions of dollars under the three Policies.

**b.**     Upon information and belief, but for Indymac's continuing breaches and defaults complained of herein, the 2006-2B Trust, the 2006-1 Trust and the 2006-H1 Trust would each have monies to make payments of principal and interest due, and either no claims or substantially reduced claims would be made or paid under the 2006-2B Policy, the 2006-1 Policy and the 2006-H1 Policy.

**43.**     **a.**     Under the Insurance Agreements, Indymac is required to reimburse and indemnify FGIC for losses and damages, including claims paid under the Policies, suffered by FGIC because of Indymac's breaches and defaults under the Transaction Documents (including the Insurance Agreements), including claims caused by Indymac's breaches of its representations and warranties, Indymac's untrue statements and material omissions, and other misfeasance and wrongful acts by Indymac in relation to the Securitizations.

**b.**    Indymac is also required to indemnify FGIC and the 2006-2B Trust for any liability, including any claim paid under the 2006-2B Policy, or any damage or expense incurred, resulting from the denial, rejection or rescission of coverage of a Covered Mortgage Loan under the Pool Policy.

**c.**    The indemnification requirement under the Insurance Agreements and the indemnification requirement relating to denial or rescission under the Pool Policy are in addition to any other right or remedy against Indymac under the Transaction Documents.

**44.**    **a.**    Indymac is also obligated to reimburse and indemnify FGIC for all of FGIC's attorney's fees, consultant's fees and other costs and expenses incurred by FGIC in discovering Indymac's defaults and enforcing FGIC's rights, including all costs and fees associated with this action.

**b.**    To date, FGIC has incurred costs and expenses in discovering Indymac's defaults and enforcing FGIC's rights in relation to the Securitizations, including the amounts paid to RMG (as defined herein) to review the few Mortgage Loans to which Indymac has permitted FGIC access.  FGIC expects to incur significantly more in such discovery and enforcement costs.

**45.**    **a.**    Upon information and belief, Indymac is aware of its breaches of its own representations and warranties relating to the Mortgage Loans under the Insurance Agreements and other Transaction Documents, especially given that Indymac is the originator and servicer of the Mortgage Loans.

**b.**    Indymac has failed to advise FGIC of the defaults of Indymac.

c.     FGIC was thus required to conduct its own independent investigation and review of the Mortgage Loans, to retain related professionals and incur related costs and expenses.  All such costs and expenses were not only incurred by FGIC to enforce its rights under the Transaction Documents, but were also a consequence of Indymac's failure to obtain and disclose information to, and to continue to cooperate with FGIC, as required by the Transaction Documents.

46.     a.     FGIC has suffered damages caused by Indymac's breaches of the Transactions Documents in the amount of the claims paid on the Policies as alleged herein, the expenses incurred in relation to the Polices to date, and other damages.

b.     FGIC will suffer additional damages caused by Indymac breaches of the Transactions Documents in the amount of claims to be paid under the Policies and expenses to be incurred.

**Repurchase of Defective Mortgage Loans**

47.     a.     As previously alleged herein, Indymac has made numerous representations and warranties respecting the Mortgage Loans.

b.     Under the terms specified in the PSA's, Indymac is required to repurchase or substitute for certain defective Mortgage Loans that fail to comply with such representations and warranties.

48.     a.     In 2007, FGIC and its agent, Risk Management Group ("**RMG**"), performed a review of some of the defaulted Mortgage Loans in the 2006-1 Securitization and the 2006-2B Securitization in order to assess Indymac's compliance with its representations and warranties in the 2006-1 and 2006-2B Transaction Documents and